Please call our first case. 12-0431 William Brandt v. Millercoors, LLC Good morning, Your Honor. Scott Morgan on behalf of the appellant, William Brandt. Good morning, Your Honor. Richard Greenberg on behalf of the appellee, Millercoors, LLC. Very good. You're both going to have 15 minutes to argue. Appellant, of course you'll want to rebuttal. Please reserve from the 15 minutes however much time you wish to have for rebuttal. Thank you. Okay? All right. Mr. Morgan, you may proceed. Thank you. May it please the Court, Counsel. My name is Scott Morgan and I represent the appellant in this matter, William Brandt. I'm here today on behalf of Mr. Brandt to ask Your Honors to reverse the trial court's order entered January 12, 2012. That order granted Millercoors' motion to reconsider. It's the trial court's August 30, 2011 order. We'd also ask that you remand the case for further proceedings in the trial court. As part of a little background, ENTEC was a limited liability company formed in 2006 doing business in Illinois and headquartered here in Illinois. It provided procurement services for maintenance, repair, and parts and managed the procurement processes for its clients. It provided order management through software that it owned and basically would help entities reduce their costs through the procurement process. William Brandt is the assignee for the benefit of creditors of ENTEC. He resides in Chicago and is also headquartered here in Chicago. Millercoors is a large brewer headquartered here in Chicago, the second largest brewer in the United States. In the allegations in the plaintiff's complaint, we say that in 2009, Millercoors engaged in a calculated plan to increase its earnings by reducing its costs. As part of this plan, Millercoors contacted ENTEC in an effort to utilize its services to further reduce those costs. And in 2007, Millercoors and ENTEC met in Milwaukee in order to discuss its efforts to reduce costs with ENTEC. And the parties continued meeting and discussing their business interests over the next few years. These discussions took place in Milwaukee and in Golden, Colorado and here in Chicago as well. Counsel, can I ask you because to make sure your time is utilized as well as it can be, the question here is the choice of law, what the venue provision was in the contract that was assigned. And according to the briefs, this meeting in Milwaukee, there were two sets of lawyers and each party had two, correct? Correct. So there were four lawyers at the table in Milwaukee doing this. And the position that you've taken is that there was no discussion allowed or there was no discussion had about what the venue would be because that was supposedly, I suppose the way to just quickly say it is it was off the table. Correct. But it was never asked for. Well, Judge, I think what we have here is a situation where Millercoors indicated to ENTEC there could be no discussion that that was non-negotiable, that those terms could not be negotiated, and the only terms that could be negotiated, this is according to the complaint in the affidavit, the only terms that could be negotiated for ENTEC involved its continued proprietary rights in its software. And that's what we've alleged, Your Honor. So based on my review and our argument is that no, those could not be negotiated. And that's a big part of our argument is this form selection clause was not anything that was entered into through arm's length negotiations as a result. Well, they could have decided not to sign the contract, right? ENTEC said we don't trust you or we're not going to deal with Millercoors and walk away, right? Absolutely. Absolutely. Going back, so it's just a standpoint. You've got a bunch of lawyers. They've gone all over the United States talking about this thing. Well, what's your best case to say that you can get out from under this in understanding that you started with Mr. Brant being in the office of Brant being in Chicago. It's also in five other states, including California. What's your best case? Well, Judge, I think what we are trying to present to your honors is that underlying the contract and the negotiations was Millercoors' fraudulent scheme designed basically to steal ENTEC's concepts and ideas and induce them to enter into the contract. And as a result, Millercoors should not be allowed to rely on a provision in the contract which was Millercoors' standard contract and where the term of that form selection clause could never be negotiated. You're right. Of course, ENTEC could have walked away from this contract. No doubt about that. Any party, I think, in general can do that. But what we have here is an inducement by Millercoors where Millercoors is hanging this contract out for ENTEC to view a business proposition. But all the while, according to us, Millercoors was involved in a fraudulent scheme to steal the idea from ENTEC and basically run it out of business. And that's exactly what occurred here. But they point out, page 13 of the blue brief, that the Supreme Court has rejected your argument that when it's just based on fraud alone, general allegations that the whole contract is fraudulent, that's grounds to find that the form selection clause is no good, that the fraud itself, you'd have to allege that the form selection clause was fraudulent. And why would that be? And they cite the case IFC Corp., which is an absolute fraudulent case. That was despicable. I can't imagine how anybody could find that IFC was doing nickel from anybody, but this court did. And how do you get around that? Well, Judge, I think that the point that we're making is the entire concept foisted on ENTEC by Millercoors was a fraudulent scheme, including the fact that the form selection clause could not be negotiated. It was all part of the same scheme. And I don't think that you can take a particular provision and put it into a bucket and say, well, you know, we are not going to look to that particular provision to determine if there was any fraud involved in that and put everything else into separate buckets. We have a transaction here that was entered into and a contract that was entered into by the parties, and the entire contract, in our opinion and according to our complaint and the affidavit submitted, was based on fraud, including the form selection clause. So that would be my best response. How do you include the form selection clause as being part of the fraud? It's nice to say it, but what do you have to back it up? Well, Judge, what we have is the entire scheme by Millercoors to basically steal the entire concept and the entire underpinning of the contract. Fine. Okay. I'll give you that. Let's assume that. But how does the form selection itself become a matter permeated with this so-called fraud that you've got in your head? I think that the way to do that is to consider it as part of the scheme. As part of that scheme, Millercoors was going to and did run NTAC out of business. It failed to pay. It knew it was going to constrict NTAC's ability to pursue its business pursuits. And then, as part of that scheme, they're going to require NTAC, if it's going to try to chase Millercoors, to have to fly out to Colorado when all of the evidence and all of the witnesses and the involvement of the breweries involved have nothing to do with Colorado. So it's a part of the scheme, and part of that scheme is to strangle them and to basically eliminate any possibility that NTAC, or now Mr. Brandt as assignee, is going to have to pursue the claims in Colorado. Colorado has nothing to do with anything involved in this transaction. Nothing. It has nothing to do with it. If anybody, you know, Coors, I think they're from Golden, Colorado. I've heard that somewhere. And, again, so your people had to be on notice that they have a very large, at the time, I don't know where their corporate headquarters was here. They don't have any breweries here. But, you know, that's their shtick is they're from Colorado. So I'm for it. Both parties are headquartered here in Illinois. Yes.  Yeah. But, of course, the marketing involves Golden. You've got two sophisticated entities here. I mean, Miller, Brandt, these are knowledgeable business concerns. I assume they're represented by knowledgeable lawyers. And, clearly, unambiguously in the contract, forum is whatever it is. And they never discussed it. Why is that a fraud? What's the fraud involved? They did discuss it. And Miller Coors advised them, you can't negotiate this term. It's part of our standard contract. Is that a fraud? As part of a fraudulent scheme, when they're trying to basically steal the corporate ideas and proprietary information of ENTTAC, and as part of that scheme, they know that essentially they're going to run the little guy out of business by not paying them. And then let's make them have to go to Colorado when none of the evidence at all is located in Colorado. It's considered, in our opinion, humbly, that that's part of the scheme that was foisted on the corporate appellant. But ENTTAC doesn't make or distribute beer. It's a service organization. So you mentioned fraud in your pleadings. The parties do. But it's not explicated as to what it was other than results in nonpayment ultimately of ENTTAC. And, also, I think we referenced specific statements having nothing to do with the forum selection clause as well. Those statements were communications to the suppliers that ENTTAC had been paid by Miller Corp. And so then the suppliers are saying, well, why aren't we being paid then? But none of that was true. So those statements that exist in the complaint. But, Mr. Brandt, it was an assignment for the benefit of creditors to Mr. Brandt. They were going down. They were done and okay by this time. There were no assets to go after anymore. Yeah. So in terms of balancing here, if we were to look at this outside of the contractual venue provision, then how could we disregard the imbalance where you've got both of the parties headquartered here and you've got one of them is BK? Well, I think that what we're asking your honors to do is to consider that result as part of the scheme here. Part of what Miller Corp. did was run ENTTAC out of business and stole their ideas and they're continuing to utilize that now directly with the suppliers so they've eliminated that part of the obligation in the contract which would have required it to pay ENTTAC, of course. Isn't it your burden though to show that you absolutely can't go to Colorado? Isn't that pretty much the burden? I think the burden is to show that one of the burdens is to show that essentially if you have to go to Colorado to litigate, you're not going to have your day in court. Correct. Yes. And how did you show that here? Well, Judge, I think what we showed here is that you can't do that when none of the evidence is in Colorado. And in order to do that, it's going to essentially be something where the plaintiff appellant, Mr. Brandt, can't fulfill any type of obligation like that in order to get his day in court in Colorado. Again, other than the negotiations that occurred there, and of course there's marketing about Golden, Colorado, but other than the negotiations that occurred in Colorado, Colorado has no relationship to this dispute. None. They're both headquartered here. Everybody's headquartered here. But why would it be prohibitively expensive to go to Colorado as opposed to here? Understanding that they negotiated in several states in the United States, including Wisconsin. The evidence, the witnesses, and the documentary evidence, everything is here. I've been doing this for a long time. On the civil side, only for 16 1⁄2 years. But it's like, oh, the papers here. I'm glad the paper's in Chicago. I've heard that they had mail papers. So I don't know why that would have anything to do with anything. I really get to say that. I like to say it. It's just odd to me that people would worry about where papers are. And the other thing, of course, are the kalanka factors that are set out. And there are six of those factors. And you can look at those to determine if the Form Selection Clause itself is reasonable or not. And in our opinion, those factors weigh in favor of finding that the Form Selection Clause is not reasonable. You know, we have a situation where we say there was fraud and inducement, essentially, in a fraudulent scheme foisted on NTAC. We think, as a result of that, that the choice of law provision should not be valid. It's fraudulently induced. Wait, wait. You're here on the choice of the form, not the choice of law? Yes. Okay. So you're going off some of that. It's not going to help you. We have to determine the proper form. And if we accept your thesis that this form selection was part of a fraud, okay, then it falls upon you to show in the record and tell us in your argument, what is it about a form in Colorado that is fraudulent? Are the courts there so one-sided toward Miller-Cohrs that Brandt feels, as a citizen of Illinois, he's not going to get a fair shake? Or what? I'm not saying that. What are the elements of fraud involved in the form selection of Colorado? And, again, I can only point to the underlying. The inconvenience of bringing evidence in. The underlying transaction where Miller-Cohrs was engaged in a scheme to defraud ENTAC in order to take its business ideas, usurp them, and eliminate ENTAC from the business itself in order to save money. That's what it's about. But that's the point that will be heard in the forum in which you will remain. It's stated as a conclusion, but that part of this case hasn't been arrived at yet. Right. Well, as a result of the ruling on the 2-6-19 motion. Right. And so the only reason I brought up the choice of law issue is that would be the first factor in Kalanka. And the second factor, we have two Illinois residents here. The third factor, the performance was to occur in Illinois and states other than Colorado. The fourth factor, we have parties and witnesses that are located in Illinois and states other than Colorado. The fifth factor is that it would be inconvenient for Brandt to litigate in Colorado. We've got both entities here in Chicago and in Illinois. And then we've got the sixth factor, and I think that's the important one. The form selection clause simply wasn't bargained for. And the cases that have been cited talk about situations where you've got an arm's length transaction in a negotiation for the form selection clause. It didn't occur here. ENTEC couldn't negotiate any part of that term, and it was part of a standard contract by Miller Corp. Because they effectively bargained for it. Miller effectively bargained for it. When they said during negotiate, this is it. We're only accepting Colorado as the form. Take it or leave it. Goodbye. They were actively bargaining for it. And Brandt said okay. My reading of the cases is when you've got a term that is required in a contract and there is no bargaining for it, I think that's what they're talking about respectfully. But I understand what you're saying. ENTEC could have walked from this deal. There's no doubt about it. You don't like the terms, you can walk away. And they wanted the business. Excuse me. Not Brandt walked away. He's signing. Yes. Thank you, ENTEC. I appreciate that. But at least wouldn't that constitute waiver? I'm sorry? But at least wouldn't that not constitute waiver? Potentially, unless you talk about the fraud underlying the transaction. And I don't think you can waive rights or you should not be held to a contract term premised on a fraudulent scheme like we have here. And I think at this time, Your Honors, I'd like to reserve the balance of my time, unless you have questions for me now, balance of my time for rebuttal. You'll have five minutes of rebuttal. Thank you. Thanks, Judge. Appellee. Mr. Greenberg. May it please the Court, Counsel, my name is Richard Greenberg. I'm here for the Appellee Miller Cores LLC. Your Honors, I think the question before the Court is whether the trial court erred when it enforced an express, clear, unambiguous form selection clause in a commercial contract between two sophisticated business entities. I think every single decision, reported decision in Illinois in that type of situation has ruled in favor of the validity of the clause, and we believe that should be the ruling here, too, and that Judge Powell's decision should be affirmed. It appears that there is agreement that these clauses are prima facie valid and that to get out from under the clause, the plaintiff would either have to show that, in effect, it would be denied its stay in court in Colorado or that perhaps the clause, for some reason, violates public policy. I don't think there's any public policy issue that's been raised here, and in fact, I think to the extent there are public policy issues, they all weigh strongly in favor of the clause, and in particular, Illinois favors freedom of contract and Illinois also favors certainty in commercial transactions. It's important when two sophisticated business entities clearly write down their agreement, that their reasonable expectation that the courts will enforce the agreement as written will be upheld. Specifically, Mr. Brandt has not shown that it would be so inconvenient to litigate in Colorado that, in effect, he would be denied his stay in court. As Justice Quinn acknowledged, there are offices for Mr. Brandt all over the United States. And abroad as well. He's very capable of litigating all over. There's just been no showing at all that Colorado is inconvenient at all, or even more inconvenient than Illinois. Notwithstanding the representations of counsel, it is clear that this service contract involved the rendering of services by NTAC, the assigner, in Georgia, North Carolina, Virginia, and in Ohio. Mr. Cranberg? Yes. Excuse me for interrupting. What is your response to the appellant's claim that the form selection clause in this contract was part of some sort of fraudulent scheme on behalf of Miller? I don't think there are any allegations that support that contention. I think the case law is clear, including the IFC Corp. decision, which let me quote from page 14 of that decision, which says, in order to invalidate the clause on the ground of fraud and overreaching, the fraud alleged must be specific to the form selection clause itself. There is no allegation in the complaint or otherwise that there was any fraud in connection with the form selection clause itself. In fact, the cases clearly go the other way. As the panel has pointed out, NTAC was represented by counsel. They had the clause in front of them. They were told you can take it or leave it. That's their claim. So when you go into a contract with your eyes open, knowing that if there is going to be a dispute, it may be a little more inconvenient for me to litigate it in Colorado, I think when that dispute arises later on, you can't be heard to say, well, now I don't want to be bound by that clause. The allegations of fraud in the complaint, Your Honor, I don't think are very well founded or meet the standard for pleading fraud in Illinois. In fact, Brandt's claim seems to be that what Miller Coors really was doing was, I think, if I got it down correctly, was to enter into a calculated plan to increase earnings by reducing costs. That doesn't sound like a fraud to me. That sounds like a good business plan and wise management by a company to reduce costs and increase profits. Moreover, while counsel says that there may have been an effort to steal ENTEC's concept and ideas, there is no allegation in the complaint that Miller Coors did steal ENTEC's concept or ideas. The other thing that I think is significant is that both parties agree that this was a contract that was negotiated over a three-year period. The negotiation started in 2010. Excuse me, in 2007. It didn't conclude until 2010. So it's a little difficult, I think, for ENTEC or the assignee, Mr. Brandt, to now argue that after having this clause in front of it for three years and not raising any objection to it, as far as I heard, and there's no allegation that there was any objection to it, that right now it should not be enforced. The other thing that I think is significant about why the clause in and of itself should be enforced is that plaintiff brings a breach of contract claim. So a plaintiff wants provisions of the contract enforced. He just doesn't want this provision enforced. I don't think plaintiffs get to pick and choose which parts of a contract can be enforceable and which ones can't be. And just as counsel said that a party can't put a provision in a bucket and take it out and then have the rest of the provisions enforced, that seems to be exactly what Mr. Brandt is trying to do here. In terms of the standard, therefore, I don't think there's been any showing at all that the plaintiff has overcome or has met his burden of showing that he would, in effect, be denied his day in court. He says that it would be inconvenient, but there's no allegation of why it would be inconvenient. Plaintiffs' own briefs say that the three most important witnesses for Miller Coors are located in Colorado. That's Darrell Loggins, who was supervising the agreement for Miller Coors, and someone in Milwaukee, and someone in North Carolina. Nobody in Illinois. While there's a claim of prejudice, there's been no showing of prejudice, no showing of comparative cost differential or why documents can't be shipped someplace else, why depositions can't be used instead of live testimony, if that would prove necessary. And, of course, the claims about disruption to business that were originally part of Entex's case no longer really apply here. They're out of business. There's no one whose workday is going to be disrupted by being in Colorado for a short period of time. As they're out of business, they're out of money. So how are they going to afford to do this in Colorado? Your Honor, I don't know that they're out of money. They apparently have enough money to prosecute this appeal and wait, you know, some 15 or 16 months before pursuing their claims. There's nothing to preclude them from hiring competent counsel in Colorado to perhaps handle the case on a contingency fee. Their complaint alleges damages of more than $20 million. Presumably, if they really feel strongly that they have a valid claim, they can convince counsel in Colorado to take it. And, really, it's no different than how are they going to litigate it here. If they don't have the money to litigate it in Colorado, I don't see how they would have the money to litigate it here. In terms of the Kalanka factors, the same clause which says that this case shall be brought, must be brought in the state court in Denver or in the United States District Court for the District of Colorado, also stipulates that Colorado law governs not only the dispute but anything related to the dispute. While it is true that today both Miller Coors and ENTEC or Brandt are resident in Colorado, Miller Coors moved its headquarters here after this contract was entered into. In terms of the place of execution or performance, I think it's pretty clear that the relevant witnesses are in Ohio, Virginia, North Carolina, and Georgia. That is where ENTEC was to render the services for Miller Coors. So, again, where parties and witnesses are, are all over the United States. And, finally, in terms of the question of whether or not the clause was bargained for, I think it was bargained for. No one held a gun to ENTEC's head for three years of negotiations and said, you have to sign this, this agreement. And notwithstanding the representations about what Miller Coors may or may not have known about ENTEC's situation at the time of contracting, none of those facts are set forth in the, in the agreement itself. They don't, they just simply don't reflect that and the agreement is, is part of the record. And, and finally, I think, again, in terms of public policy, there are, there are good public policy reasons to enforce these agreements. Illinois supports the notion of freedom of contract, and also when you have two sophisticated business entities represented by counsel entering into a commercial transaction, and there's no doubt about what a clause means, the reasonable expectation of those parties, which I think the courts in Illinois have been very respectful of, is that their agreement, as written, will be enforced. Unless the panel has any more questions, I will just conclude by saying, in this type of situation, every reported decision in Illinois seems to enforce these contracts. This one should be enforced, too, and for that reason, we ask that the judgment below be affirmed. Thank you very much. Thank you. Five minutes, sir. None of the reported cases in Illinois deal with a situation where a plaintiff has said that the entire contract is a part of a fraudulent scheme. That's what we have here. I think IFC credited. Where are the two Intech employees who are still employed? Where are they? Here in Chicago. And, Judge, I don't think that anybody who's entering into a contract would contemplate reasonably, in the business world, that if the party that I'm contracting with is defrauding me, that I've now got to pursue the fraud claim in a form selected in a form selection clause. This is an Illinois fraud claim. Nobody contemplated the time of contracting that somebody was committing a fraud on the other. And what I'm asking your honors to do is to find that, in those circumstances, that Intech didn't say, hey, Miller Coors, if you guys are defrauding me, I'll agree that I've got to pursue you in Colorado. That's what we have here. We've got a complaint by a corporate entity, now a Mr. Brandt. But we've got a claim for fraud. And I think a finding that the plaintiff has to pursue that Illinois fraud claim in Colorado as a result of a form selection clause in the contract. But so this arises from the agreement, the fraud was part of the agreement, right? Yes. But your jurisdictional clause that was signed by Miller Coors says, this agreement is governed by the laws of the state of Colorado without regard to its conflict of law provisions. Company waives all rights to trial by jury in any litigation arising from or related to this agreement. Well, that's very, very clear. So how is it that you can obviate this contractual provision other than your explanation that it was just non-negotiable? Judge, it's a common law fraud claim. A common law fraud claim. Did you file a breach of contract action? Yes. In the alternative, we pursued breach of contract, fraud, unjust enrichment, and commercial disparagement. And I don't believe that Intech was ever under the belief that if Miller Coors was going to commercially disparage it, run it out of business, and commit a fraud upon it, that it had somehow agreed to pursue all that type of litigation out in Colorado. I just don't believe that that's reasonable under the circumstances. And again, this is a motion down below in the trial court that was granted pursuant to 2619. And so what we're asking at this time is to reverse that order to allow Mr. Brandt to pursue those common law claims and in the alternative, the breach of contract claim. In the Dace case, which you cite in your reply, it says that a clause that's part of a standard form agreement drafted by Apple was presented to Dace prior to any agreement between the parties and was or certainly could have been the subject of negotiation. We decline to remedy Dace's failure or inability to object to the clause at the time of contracting and say no reason to release a sophisticated corporate entity from the consequences of its bargain. Dace is suing on an agreement seeking to demonstrate the performance under it while simultaneously alleging that certain terms of the agreement are unenforceable. Absent contravention of Illinois general venue statute, inconvenience of a California forum is simply not a sufficient basis upon which to invalidate the party's agreement. Doesn't that close this issue? I don't believe it does, Your Honor, when you've got an underlying fraud claim separate and in part from the contract claim. I just don't believe that NTAC or any other commercial entity, when it agrees to a forum selection clause, agrees to litigate a fraud, commercial disparagement, or other claim in the forum that's reflected in the forum selection clause. This court in Compass held that a builder or was a subcontractor was held liable for a forum selection clause they never saw. It was on the back of a forum. They received the forum. They never read the forum. Here you're saying that the forum was discussed, the forum selection clause was made aware to NTAC, and of course it was take it or leave it. But in Compass they said even if you don't know about it, you're on notice. If my recollection is correct, in Compass there was a fax in the back of the contract was faxed to the entity and at oral argument on the appeal they admitted that they had received it. But I guess what I'm trying to communicate is something a little different. If you've got a valid forum selection clause and you've got a contract claim based on it, it's enforceable, obviously. Here I'm talking about a fraud. I'm talking about commercial disparagement. NTAC never agreed, in my opinion, to litigate those types of claims in Colorado. It was defrauded. How can it be required to pursue that in Colorado? And I suppose that's the issue that I'm trying to present. But aren't there any cases in America that would suggest that you could argue that a forum selection clause can be selectively invoked based on the nature of the claims, other than the one we've all discussed about the idea that there's fraud in the forum selection clause? I mean, to say that they agreed to have all cases heard in Colorado but not fraud cases, how? Well, I think my response, and I don't have any cases, but my response is we've got a contract and that the forum selection clause talks about litigating claims about the contract. This isn't a claim about the contract when you're talking about a common law fraud, commercial disparagement, unjust enrichment claim. They're separate and apart from the contract. Well, the subjects are criminal laws, right? So if there's fraud, fraud, you know, the attorney general's office or the state's attorney's office, the FBI? I don't know. I would struggle with any criminal law issues. But what I'm trying to say is parties didn't agree that if one of them defrauded the other, in my opinion, everything's got to be brought in Colorado, and that's the crux of the agreement, I suppose. And I welcome any other questions. It's a fraud arising from the contract. Yes. Yes. And the matter was brought in the commercial section of the law division. Because it had a breach of contract claim as an alternative pleading theory. Thank you, Mr. Green. All right. Thank you, Your Honors, for your time. Thank you to both parties for your excellent brief and your good oral arguments. We're going to take this case under advisement. We have to make a change in the panel now for the next case. So there will be a brief recess, probably no more than five minutes. So I suggest you stay seated where you are.